UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIZA GERSHMAN, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>BAYER HEALTHCARE LLC,<br><br>  Defendant. | Case No. 14-cv-05332-HSG<br><br>**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 30 |

Defendant Bayer HealthCare LLC moves to dismiss Plaintiff Liza Gershman's First Amended Class Action Complaint ("FAC"). For the reasons articulated below, the motion is DENIED IN PART and GRANTED IN PART.

## I. BACKGROUND

On December 4, 2014, Plaintiff Gershman filed a class action complaint against Defendant. On January 12, 2015, Plaintiff Gershman and Plaintiff Sean Porter filed the FAC. Plaintiffs allege that Defendant manufactures an Omega-3 DHA dietary supplement called "Flintstones Healthy Brain Support" (the "Product"). FAC ¶ 1. On the Product's packaging, Defendant characterizes the Product as "Healthy Brain Support" and claims that the Product "Supports Healthy Brain Function." *Id.* ¶ 33. Plaintiffs allege that these claims are "false, misleading, and deceptive." *Id.* ¶ 22. Plaintiffs further allege that they purchased the Product "in reliance on Bayer's brain function and brain support representations," and that "[h]ad [they] known the truth about Bayer's misrepresentations, [they] would not have purchased the Product." *Id.* ¶¶ 27-28.

Plaintiffs allege that Defendant's advertising violates California and Illinois consumer protection laws for three independent reasons:

  1.  <u>Brain Chemistry Allegations</u>. First, Plaintiffs allege that "the Product cannot

support brain function or brain support because: (1) a trivial and meaningless amount of DHA is provided to the brain by the Product; and (2) American children and adults get sufficient DHA in their daily diet." *Id.* ¶ 58. As factual support for this allegation, Plaintiffs state that "[t]he brain contains about 5000 mg of DHA," a daily dose of the Product provides "50mg-100mg of Omega-3 DHA," and therefore "a daily dose of the Product would only replace about .000005% and .00001% of the brain's DHA content in children 2-3 years of age and adults and children over 4, respectively, on a daily basis." *Id.* ¶¶ 4, 13, 61. In other words, while Plaintiffs do not dispute that "*molecular* DHA does play a role in the brain, this does not mean *supplemental* DHA supports brain function," because Americans naturally consume adequate DHA and the Product contains such a trivial amount of DHA that "experts deem this amount as incapable of providing any brain function or brain support benefit." *Id.* ¶¶ 59-61 (emphasis in original). Plaintiffs also support their claim by pointing to determinations by the Institute of Medicine (IOM) and the Food and Drug Administration (FDA) that DHA "is not an essential nutrient." *Id.* ¶¶ 62-63.

  2. <u>RCT Allegations</u>. Second, Plaintiffs allege that "[e]xperts in the field determine whether a substance provides brain function benefits by performing randomized controlled clinical trials ('RCTs') and measuring whether, in comparison to placebo, it provides improved cognitive function." *Id.* ¶ 3. Plaintiffs then cite to four RCTs that they allege "conclusively show[] that algal Omega-3 DHA supplements, such as the Flintstones Healthy Brain Support supplements sold by Defendant, do not improve cognitive development" and "perform[] no better than placebo with regard to brain function." *Id.* ¶¶ 4, 8. These studies involved "the *same* algal Omega-3 DHA" that is contained in the Product and therefore allegedly demonstrate that Defendant's Product claims are false. *Id.* ¶ 8 (emphasis in original).

  3. <u>Lack of Substantiation</u>. Third, Plaintiffs allege that Defendant's claims in relation to the product are "unlawful" because "there is no competent and reliable evidence that [the Product] provides brain support or brain function benefits" as required by the federal Dietary Supplement Health and Education Act of 1994 ("DSHEA") and the California Sherman Act. *Id.* ¶ 19. According to the FAC, "[e]xperts in the field . . . deem the only credible scientific evidence to substantiate human health benefit claims . . . [to be] evidence from RCTs," and "[n]o such RCTs

2

exist to substantiate" Defendant's claims. *Id.* ¶ 18.

Plaintiffs assert four causes of action based on these facts: 1) violation of the "fraudulent" prong of the California Unfair Competition Law ("UCL") on behalf of a putative multi-state class of consumers who "purchased [the Product] in California, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington," or, in the alternative, a California-only class; 2) violation of the "unlawful" prong of the UCL on behalf of a putative class of California consumers; 3) violation of the California Consumers Legal Remedies Act ("CLRA") on behalf of a putative class of California consumers; and 4) violation of the Illinois Consumer Fraud Act ("ICFA") on behalf of a putative class of Illinois consumers. Plaintiffs seek both monetary damages and injunctive relief.

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. On a motion to dismiss, the court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A court "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (holding that courts may consider materials "incorporated by reference in the complaint").

Because Plaintiffs' claims are premised on allegedly fraudulent conduct, Rule 9(b) also

3

applies.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged."  *Id.* at 1124.  Claims for fraud must be based on facts "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge."  *Id.*  Allegations of fraud must meet both Rule 9(b)'s particularity requirement and *Iqbal*'s plausibility standard.  *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

### B. UCL and CLRA Claims

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The three "prongs" of the UCL are independent of each other and may be asserted as separate claims.  The "unlawful" prong of the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  The "fraudulent" prong of the UCL imposes liability on a defendant who makes false or misleading product claims.  *Williams v. Gerber Prods., Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Under the applicable "reasonable consumer" standard, a plaintiff must "show that members of the public are likely to be deceived."  *Id.* (internal quotation marks omitted).

California's CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770.  CLRA claims are governed by the same "reasonable consumer" test that governs claims brought under the fraudulent prong of the UCL.  *Williams*, 552 F.3d at 938.

#### 1. UCL Unlawful Prong (First Cause of Action)

In the FAC, Plaintiffs allege that because there are no "high quality RCTs" that substantiate the health benefits claimed by the Product, Defendant is in violation of the DSHEA and the Sherman Law and therefore has committed "unlawful business practices" under the UCL.  *See* FAC ¶¶ 66-72, 87-95.

1   It is well settled that private litigants may not bring any UCL claims based on an alleged lack of substantiation. *Nat'l Council Against Health Fraud Inc. v. King Bio Pharms. Inc.*, 107 Cal. App. 4th 1336, 1345 (2003) ("Private plaintiffs are not authorized to demand substantiation for advertising claims."). The California legislature "has expressly permitted prosecuting authorities, but not private plaintiffs, to require substantiation of advertising claims," and "[t]his limitation prevents undue harassment of advertisers and is the least burdensome method of obtaining substantiation for advertising claims." *Id.*; *see also Bronson v. Johnson & Johnson*, No. 12-cv-04184-CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) (granting motion to dismiss claims under all three prongs of the UCL premised on lack of substantiation allegations because "[c]laims that rest on a lack of substantiation, instead of provable falsehoods, are not cognizable under the California consumer protection laws"); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012) ("Consumer claims for a lack of substantiation are not cognizable under California law."); *Stanley v. Bayer Healthcare, Inc.*, No. 11-cv-00862-IEG, 2012 WL 1132920, at *6 (S.D. Cal. Apr. 3, 2012) ("Plaintiff's argument that she can assert a UCL 'unlawful conduct' claim based upon violation of [a federal statute that imposes substantiation standards for certain advertising claims] is precluded by the California Court of Appeal's opinion in *King Bio*.").

Plaintiffs contend that the UCL unlawful prong "stands on its own and is a wholly separate and different claim than a falsity claim." Opp. at 13. While true, this does not alter the fact that lack of substantiation claims may not be brought by private plaintiffs under *any* prong of the UCL. *See, e.g.*, *Stanley*, 2012 WL 1132920, at *6. Plaintiffs do not cite a single case in which a court allowed a claim to proceed under any prong of the UCL based on a lack of substantiation, and the Court finds that there is no basis for treating these prongs differently in this context. The California legislature delegated the authority to demand substantiation for advertising claims to prosecuting authorities alone. Cal. Bus. & Prof. Code § 17508; *see King Bio*, 107 Cal. App. 4th at 1345. The legislature did not create any exception to that rule for any prong of the UCL. Nor would such an exception make sense when vesting this authority in prosecuting agencies rather than private plaintiffs was considered the "least burdensome method of obtaining substantiation

1   for advertising claims." *King Bio*, 107 Cal. App. 4th at 1345.

2   The Court finds that Plaintiffs have not stated a claim under the unlawful prong of the
3   UCL. As a result, the Court need not consider Defendant's preemption argument.

### 2. UCL Fraudulent Prong (First Cause of Action)

Plaintiffs allege two distinct factual bases for their claim under the fraudulent prong of the UCL. First, Plaintiffs allege that Defendant's Product claims are false or misleading because American consumers already have sufficient DHA in their diet and any additional amount of DHA provided to the brain by the Product is so "trivial and meaningless" that it cannot, as a matter of science, have any effect on brain function. FAC ¶ 58. Second, Plaintiffs allege that the four RCTs cited in the FAC "conclusively" show that DHA supplements, like the Product "do not improve cognitive development" and therefore demonstrate the falsity of Defendant's representations. FAC ¶ 4.

#### i. Brain Chemistry Allegations

Plaintiffs allege that "the Product cannot support brain function or brain support because: (1) a trivial and meaningless amount of DHA is provided to the brain by the Product; and (2) American children and adults get sufficient DHA in their daily diet." FAC ¶ 58. Plaintiffs support these assertions by alleging that "[t]he brain contains about 5000 mg of DHA," a daily dose of the Product provides "50mg-100mg of Omega-3DHA," and therefore "a daily dose of the Product would only replace about .000005% and .00001% of the brain's DHA content in children 2-3 years of age and adults and children over 4, respectively, on a daily basis." *Id.* ¶¶ 4, 13, 61. Furthermore, Plaintiffs allege that "experts deem this amount [of DHA provided by the Product on a daily basis] as incapable of providing any brain function or brain support benefit." *Id.* ¶¶ 59, 61. In other words, the Product cannot have any effect on brain health "as a fundamental matter of body/brain chemistry." Opp. at 1; *see also* FAC ¶¶ 10 ("[T]he algal oil derived DHA in the Product is superfluous as it is not used by the body once consumed, making it useless for any brain function or brain support benefit."), 62 ("[T]he algal oil derived DHA in the Product has no effect on brain function or brain support . . . .").

The Court finds that these brain chemistry allegations, taken as true for purposes of this

6

1  motion to dismiss, are sufficient to state a claim.  If Plaintiffs successfully prove that the amount
2  of Omega DHA in the Product is so trivial that it cannot, as a practical and scientific matter,
3  "support brain function," they will have affirmatively demonstrated the falsity of Defendant's
4  Product claims.  *See Chavez v. Nestle USA, Inc.*, 511 Fed. Appx. 606, 607 (9th Cir. 2013)
5  (reversing district court's dismissal of complaint because plaintiff adequately pleaded a UCL
6  claim by alleging "that the product actually contains very small amounts of the touted ingredient,
7  DHA" and that "in order to obtain enough DHA from the [product] to promote potential brain
8  development, young children need to consume an impractical and extremely high quantity of [the
9  product]—more than a bottle's worth each day"); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533,
10  543-44 (S.D.N.Y. 2013) (denying motion to dismiss where plaintiffs alleged that "it is medically
11  impossible" for the active ingredients in defendant's product to "rebuild cartilage" as claimed);
12  *Murray v. Elations Co. LLC*, No. 13-cv-02357-BAS, 2014 WL 3849911, at *8 (S.D. Cal. Aug. 4,
13  2014) (denying motion to dismiss where plaintiff alleged that study concluding that "adult
14  cartilage cannot be regenerated" demonstrated the falsity of defendant's claim that its product
15  "renews joint cartilage").

16  Defendant's argument that Plaintiffs have not offered "factual support" for the brain
17  chemistry factual allegations, *see* Reply at 5, must be left to later stages of the litigation in which
18  the strength of the evidence is an appropriate consideration.  *See Vasic v. Patent Health, LLC*, No.
19  13-cv-00849-AJB, 2014 WL 940323, at *7 (S.D. Cal. Mar. 10, 2014) (observing that "the crux of
20  the disagreement between the parties focuses on the strength of the evidence cited in the"
21  complaint and concluding that "because this is a motion to dismiss, wherein the Court must take
22  the factual allegations as presented by the plaintiff as true, the Court cannot resolve the parties'
23  dispute at this juncture").  Here, Plaintiffs have pled their claim with sufficient specificity to give
24  Defendant notice of the theory of misconduct it must defend against, and no more is required at
25  this stage.[1]

---

[1] Plaintiffs also assert that the IOM and FDA's determinations that DHA is "not an essential nutrient" support their claim that Defendant's product claims are false or misleading.  FAC ¶¶ 62-63.  Even taking this allegation as true, the Court agrees with Defendant that the mere fact that DHA is not "essential" in these agencies' view has no bearing on whether DHA "supports healthy

ii. RCT Allegations

Plaintiffs further allege that the evidence from the four RCTs cited in the FAC constitutes a separate basis supporting their claim under the fraudulent prong of the UCL.  *See* FAC ¶ 58.  While the Court finds that Plaintiffs have stated a claim under the fraudulent prong of the UCL based on their brain chemistry allegations as described above, the Court finds that Plaintiffs cannot alternatively state a UCL claim solely on the basis of the RCT allegations.  Plaintiffs allege that "experts in the field" would test the validity of Defendant's "brain function" and "brain support" Product claims by conducting RCTs that measure whether the Product "provides improved cognitive function."  *Id.* ¶ 3.  But the RCTs cited by Plaintiffs in the FAC, which the Court may consider since they are "incorporated by reference in the complaint," *Ritchie*, 342 F.3d at 908, contradict this allegation.  On their face, the studies do not dispute that DHA is beneficial to brain function or that many studies have concluded that DHA supplementation can have positive effects on the brain.  *See* Kennedy, et al., at 48; Ryan, et al., at 1-2; McNamara, et al., at 1060; Richardson, et al., at 1.  Furthermore, the studies distinguish between the concepts of general brain function support and affirmative improvements to specified cognitive skills.  *Compare* Kennedy, et al., at 48 ("With respect to *brain function*, incorporation of adequate amounts of [Omega-3 DHA] into neural cell membranes is essential for normal brain function.") (emphasis added), *with* Kennedy, et al., at 51 ("The specific objective of the current study was to investigate whether supplementation with . . . DHA could beneficially modulate *cognitive performance or mood* in children.") (emphasis added).  While Defendant's Product claims address only the former general concept, Plaintiffs cite to the studies' conclusions regarding the latter specific concept as proof of the falsity of Defendant's claims.  *See* FAC ¶ 4 ("RCTs have conclusively shown that algal Omega-3 DHA supplements, such as [Defendant's Product], do not *improve cognitive development*.") (emphasis added).  This "mismatch" between the studies' conclusions and Defendant's actual Product representations render Plaintiffs' claims that brain support is measured *only* by testing for "cognitive improvement" implausible under *Twombly*.  *See Eckler v. Wal-Mart*

---

brain function."  *See* Reply at 5.

8

1  *Stores, Inc.*, No. 12-cv-00727-LAB, 2012 WL 5382218, at *7 (S.D. Cal. Nov. 1, 2012)

2  (dismissing UCL claim where studies cited by plaintiff made "a very particular showing with

3  respect to a degenerative joint disease" and did not "address the far more general claim [made by

4  Defendant] that [the product's active ingredient] is good for the body's joints").

5        Accordingly, the Court dismisses Plaintiffs' claims under the fraudulent prong of the UCL

6  to the extent they are predicated on the RCT allegations. Plaintiffs may amend their complaint if

7  they are able to identify RCTs that directly address the validity of Defendant's Product claims.

          iii.   Non-California Plaintiffs

9        Plaintiff Gershman brings her claim under the fraudulent prong of the UCL on behalf of a

10  putative multi-state class. Where "none of the alleged misconduct or injuries occurred in

11  California," the UCL has no application. *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134,

12  1147 (N.D. Cal. 2013) (dismissing claims brought on behalf of non-California residents where

13  defendant was located in Texas and California-based named plaintiffs did not allege "any activity

14  within California except their own purchase" of the products). Claims may be brought under

15  California statutes "by out-of-state parties when they are harmed by wrongful conduct occurring in

16  California." *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 224-25 (1999). To

17  determine whether the wrongful conduct occurred in California, courts consider "where the

18  defendant does business, whether the defendant's principal offices are located in California, where

19  class members are located, and the location from which advertising and other promotional

20  literature decisions were made." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917 (C.D. Cal.

21  2011). In addition, "in-state sales alone cannot properly be considered sufficient to establish a

22  nexus with California." *See Churchill Vill., LLC v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1127

23  (N.D. Cal. 2000) (finding that UCL claims brought on behalf of non-California residents could not

24  proceed where defendant was located in New York, had its principal place of business in

25  Connecticut, and did not engage in any of the alleged misconduct beyond the mere sale of

26  products in California).

27        The only fact that Plaintiffs have alleged in support of extra-territorial application of the

28  UCL is that some portion of Defendant's sales of the Product took place in California. *See* FAC ¶

1    31. Per the FAC, Defendant is incorporated in Delaware and has its principal place of business in
2    New Jersey. *Id.* ¶ 29. Plaintiffs do not allege that Defendant's marketing activities were
3    coordinated in California, or that the Product was manufactured in or distributed from California.
4    Plaintiffs thus have not alleged the required nexus between California and Defendant to support
5    extra-territorial application of the UCL. *Cf. Johnson v. Triple Leaf Tea Inc.*, No. 14-cv-01570-
6    MMC, 2014 WL 4744558, at *7 (N.D. Cal. Sept. 23, 2014) (applying UCL extraterritorially where
7    defendant was a California corporation with its principal place of business in California); *In re*
8    *Clorox*, 894 F. Supp. 2d at 1237-38 (applying UCL to nationwide class where defendant
9    "conduct[ed] substantial business in California and ha[d] its principal place of business and
10   corporate headquarters in the state, decisions regarding the challenged representation were made
11   in California, [defendant's] marketing activities were coordinated at its California headquarters,
12   and a significant number of class members reside[d] in California"); *Forcellati v. Hyland's, Inc.*,
13   876 F. Supp. 2d 1155, 1160 (C.D. Cal. June 1, 2012) (applying UCL extraterritorially where
14   defendant's headquarters were located in California); *Bohn v. Pharmavite, LLC*, No. 11-cv-10430-
15   GHK, 2012 WL 8898669, at *3-4 (C.D. Cal. May 16, 2012) (applying UCL extraterritorially
16   where defendant's headquarters were located in California and the products at issue were
17   manufactured, distributed, marketed, and sold to consumers nationwide from that headquarters).
18       Plaintiffs' arguments related to choice-of-law analysis miss the point. They first argue that
19   "a multi-state class of states with consumer fraud laws substantially identical to the UCL is
20   proper," and cite to a case in which a district court recently certified such a class. Opp. at 15
21   (citing *Mullins v. Digital Direct, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept., 30,
22   2014)). However, the plaintiffs in *Mullins* pleaded claims under the consumer protection laws of
23   each of the states represented in the multi-state class. *Mullins*, 2014 WL 5461903, at *1 ("This is
24   a putative consumer fraud class action arising under the [ICFA] and similar consumer protection
25   laws in nine other states."). Here, Plaintiff Gershman purports to bring *only* a California state law
26   claim on behalf of a class of consumers hailing from seven other states. *Mullins* therefore has no
27   bearing on whether the UCL extends to out-of-state plaintiffs.
28       Plaintiffs also argue that choice-of-law analyses should not be considered until the class

10

1 certification stage. Opp. at 16-17. But at this stage the Court is determining the jurisdictional

2 reach of the UCL, not deciding what substantive law should apply to a certified class.

The Court finds that Plaintiffs' UCL claim on behalf of a putative multi-state class cannot proceed based on the allegations in the FAC. However, Plaintiff Gershman may bring this claim on behalf of the putative California-only class.

### 3. CLRA (Third Cause of Action)

Because Plaintiffs have successfully stated a claim under the fraudulent prong of the UCL, the Court finds that Plaintiffs also have stated a claim under the CLRA. *See Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) (noting that because the CLRA and the fraudulent prong of the UCL apply the same standard, "courts often analyze these [two] statutes together"). For the reasons articulated above, however, the Court dismisses Plaintiffs' CLRA claim to the extent it is based on the RCT allegations.

### C. ICFA Claim (Fourth Cause of Action)

To state a claim under the ICFA, a plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 267 (2002). Plaintiff Porter alleges that he "suffered injury in fact and lost money at the point when he purchased the Product," and that he would not have purchased the Product in the absence of Defendant's alleged misrepresentations. FAC ¶ 28.

Defendant argues that Plaintiff Porter has failed to state an ICFA claim because he does not allege that he suffered actual damages—*i.e.*, that he used the Product and it did not work. But the ICFA does not require such proof: the allegations that Plaintiff Porter paid more than he otherwise would have in the absence of Defendant's alleged false advertising, FAC ¶¶ 28, 74-75, are sufficient to state a claim. *Lipton v. Chattem, Inc.*, No. 11-cv-2952, 2012 WL 1192083, at *5 (N.D. Ill. Apr. 10, 2012) ("[T]he complaint alleges that [plaintiff] was injured because she purchased a product that was worth less than she paid for it. . . . [T]hose allegations are sufficient to plead actual damages under Illinois law."); *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980,

1   990 (N.D. Ill. 2013) ("[Plaintiff] alleges that he was deprived of the benefit of the bargain because the [product at issue] was actually worth less than what it would have been worth had [defendant's product claims been true]. This is sufficient to plead actual damages under the ICFA.").

Plaintiffs have alleged that the Product is worthless because it cannot provide any of the claimed brain function benefits. Because Plaintiff Porter therefore paid more for the product than it was allegedly worth (*i.e.*, zero), Plaintiff Porter has alleged the required financial injury. The Court thus finds that Plaintiffs have stated a claim under the ICFA.

### D. Standing to Seek Injunctive Relief

Standing is "an essential and unchanged part of the case-or-controversy requirement of Article III" of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To have standing to seek prospective injunctive relief, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks omitted). In a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

In false advertising cases, "where a plaintiff has no intention of purchasing the product in the future, a majority of district courts have held that the plaintiff has no standing to seek prospective injunctive relief, and some have also held that a plaintiff who is aware of allegedly misleading advertising has no standing to seek prospective injunctive relief." *Davidson v. Kimberly-Clark Corp.*, No. 14-cv-01783-PJH, 2014 WL 7247398, at *4 (N.D. Cal. Dec. 19, 2014). Furthermore, in cases "involving claims that a product does not work or perform as advertised, where the plaintiff clearly will not purchase the product again, courts have found no risk of future harm and no basis for prospective injunctive relief." *Id.* at *5.

Plaintiffs do not allege that they intend to purchase the Product again in the future. Indeed, the FAC states that Plaintiffs "would not have purchased the Product had they known that Bayer's brain function and brain support representations were false and misleading." FAC ¶ 74. It is entirely implausible that Plaintiffs risk being harmed by the Product again. The Court therefore finds that Plaintiffs have not alleged "a real and immediate threat" of future injury and do not have

standing to seek injunctive relief.

Plaintiffs' reliance on *Henderson v. Gruma Corp.* does not persuade the Court to alter its conclusion. While the *Henderson* court rejected the very argument asserted by Defendant here, the court did so based on policy reasons: "to prevent [plaintiffs] from bringing suit on behalf of a class in federal court [because they are now aware of the true content of the products] would surely thwart the objective of California's consumer protection laws." No. 10-cv-04173-AHM, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011). This Court respectfully disagrees, because state policy objectives cannot trump the requirements of Article III. *See Delarosa v. Boiron, Inc.*, No. 10-cv-01569-JST, 2012 WL 8716658, at *3 (C.D. Cal. Dec. 28, 2012) ("To the extent that *Henderson* and other cases purport to create a public-policy exception to the standing requirement, that exception does not square with Article III's mandate.").

Finally, Plaintiffs' argument that "Illinois law expressly provides" for injunctive relief in private damages actions under the ICFA is of no consequence. Opp. at 20. The inquiry in federal court is whether Plaintiffs have Article III standing. *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013) ("[S]tanding in federal court is a question of federal law, not state law."). Plaintiffs' assertion that "there is no Article III analysis to be considered under the ICFA" is incorrect. *See Lee v. Am. N'tl Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) ("[A] plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court if he cannot [satisfy the requirements of Article III].").

### III. CONCLUSION

The Court GRANTS WITH PREJUDICE Defendant's motion to dismiss the FAC as to Plaintiffs' claims under the unlawful prong of the UCL and claims for injunctive relief. The Court GRANTS WITH LEAVE TO AMEND Defendant's motion to dismiss as to Plaintiffs' claims under the CLRA and the fraudulent prong of the UCL based on the RCT allegations, and claims under the fraudulent prong of the UCL on behalf of the multi-state class. Plaintiffs may file an amended complaint within 21 days of the date of this Order if they are able to identify RCTs that specifically address the validity of Defendant's brain support and brain function Product claims, or

can sufficiently allege the required nexus between California and Defendant to support extra-territorial application of the UCL.

The Court otherwise DENIES the motion. Discovery shall be limited to those claims and legal theories that remain. A case management conference will be held on June 2, 2015, at 2:00 p.m. in Courtroom 15, 18th Floor, San Francisco. The parties shall file a joint case management statement by May 26, 2015 and include a proposed discovery plan in that statement.

**IT IS SO ORDERED.**

Dated: May 8, 2015

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

14