BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
Elaine A. Ryan (*Admitted Pro Hac Vice*)
Patricia N. Syverson (CA SBN 203111)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
psyverson@bffb.com
Telephone: (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
Manfred P. Muecke (CA SBN 222893)
mmuecke@bffb.com
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 756-7748

BOODELL & DOMANSKIS, LLC
Stewart M. Weltman (*Admitted Pro Hac Vice*)
sweltman@boodlaw.com
Max A. Stein (*Admitted Pro Hac Vice*)
mstein@boodlaw.com
353 North Clark St, Suite 1800,
Chicago, Illinois 60654
Telephone: (312) 938-1670

(Additional counsel appear on signature page)
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIZA GERSHMAN, SEAN PORTER, MATTHEW KAPLAN, and CHANDRA LAW, On Behalf of Themselves and All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>BAYER HEALTHCARE, LLC, a Delaware Limited Liability Company,<br><br>          Defendant. | Case No.:   3:14-cv-05332-HSG<br><br>**REVISED SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1.   VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq*;<br>2.   VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 et seq.;<br>3.   VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT, 815 Ill. Comp. Stat. 502/1 et seq., and<br>4.   VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, §501.201 et seq. |

REVISED SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Liza Gershman, Sean Porter, Matthew Kaplan and Chandra Law, bring this action on behalf of themselves and all others similarly situated against Defendant Bayer Healthcare, LLC ("Bayer" or "Defendant") and state:

## NATURE OF ACTION

1.     In or around August 2013, Bayer began manufacturing, marketing, selling and distributing Flintstones Healthy Brain Support, a gummy-chewable Omega-3 DHA dietary supplement made with Life's DHA ("the Product"). The Product is not a multivitamin. The Product's sole represented benefits are to provide brain function benefits and brain support benefits. The Product is for adults and children two years and older.

2.     Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Bayer claims that consuming the Product will "Support[] Healthy Brain Function". On each and every package immediately under the Product name it states "Healthy" above the phrase "BRAIN SUPPORT" (the latter being in a much larger font). In a separate box below this quoted language is the representation that "Omega-3 DHA Supports Healthy Brain Function."[1]

3.     The Flintstones Healthy Brain Support label – in smaller print – on the side of the bottle – carries a required "disclaimer" that the Product is not "intended to diagnose, treat, cure or prevent any disease." This disclaimer language is required when a dietary supplement manufacturer makes a "structure/function" claim, such as Defendant has made here.

4.     This disease disclaimer has no impact on the representations being challenged. The FDA regulations distinguish between "structure/function claims" – such as the brain support/function claims Bayer makes – and "disease claims" which require pre-market approval from the FDA. *See* FDA, Guidance for Industry: Structure/Function Claims, Small Entity Compliance Guide, available at,

---

[1] The other ingredients are sugars and a miniscule amount of vitamin C – 2% of the minimum daily value.

http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/ucm103340.htm.

5.    The only ingredient in the Product that purportedly provides any brain health benefits is the 50mg-100mg of Omega-3 DHA in each daily dose.[2]  The amount of algal oil derived DHA in the Product is superfluous as it is not used by the body once consumed, making it useless for any brain function or brain support benefit.  In this regard, the scientific evidence shows that the body manufactures DHA from other readily available fatty acids derived from a variety of dietary sources.  Thus, American children and adults, who are the target market for the Product, consume adequate amounts of DHA in their diet.  There is no need for anyone to take a DHA supplement - their bodies make the needed amounts of DHA.

6.    For example, the Institute of Medicine ("IOM")—the health arm of the National Academies—has issued a report stating that it does not recognize a dietary requirement for DHA as there is no DHA deficiency in adults or children in the United States.  *See* Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (Macronutrients): The National Academies Press; 2005 at 5-6, 11, 469.

7.    On April 22, 2014, the FDA embraced the IOM finding by publishing a Final Rule that acted on and expressly rejected Martek Biosciences Corp.'s (the maker of the Life's DHA in Bayer's Product) request that the FDA recognize a daily requirement for DHA.  *See* http://www.gpo.gov/fdsys/pkg/FR-2014-04-28/pdf/2014-09492.pdf.  In doing so, the FDA acknowledged that there is no dietary requirement for DHA as it is not an essential nutrient.  *Id*.  That is why there is no daily value listed on the Product label.

8.    Moreover, only a trivial amount of the DHA in the Product ever enters the brain after it is consumed.  The brain contains about 5000 mg of DHA.  A daily

---

[2] 50 mg is the recommended daily dose for children 2 and 3 years of age and 100mg is the recommended daily dose for those 4 years of age and older.

dose of the Product would only provide about .000005% and .00001% of the brain's DHA content in children 2-3 years of age and adults and children over 4, respectively. This amount is so trivial that experts in the field can conclude, on this basis alone, that the DHA contained in the Product cannot and does not support the brain or its functioning in any manner.

9.    Bayer has employed numerous methods to convey its uniform, deceptive brain function and brain support representations to consumers including the name of the Product and the front of the Product's packaging and labeling where they cannot be missed by consumers.

10.    As a result of Bayer's deceptive brain function and brain support representations, consumers—including Plaintiffs and members of the proposed Classes—have purchased the Product, which does not perform as advertised.  The only reason a consumer would purchase the Product is to obtain the advertised brain function and brain support benefits because these are the only stated benefits of the Product.

11.    Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased Flintstones Healthy Brain Support to obtain redress for those who have purchased the Product.  Based on violations of state unfair competition laws (detailed below), Plaintiffs seek monetary relief for consumers who purchased the Product.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Class members are citizens of a state different from Defendant.

13.    This Court has personal jurisdiction over Defendant because Defendant is authorized to conduct and does conduct business in California.  Defendant has

1  marketed, promoted, distributed, and sold the Product in California and Defendant

2  has sufficient minimum contacts with this State and/or sufficiently availed itself of

3  the markets in this State through its promotion, sales, distribution and marketing

4  within this State to render the exercise of jurisdiction by this Court permissible.

5      14.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a

6  substantial part of the events giving rise to Plaintiff Gershman's claims occurred

7  while she resided in this judicial district.  Venue is also proper because Defendant

8  transacts substantial business in this District.

9                          **PARTIES**

10     15.    Plaintiff Liza Gershman is a citizen of California and resides in San

11 Francisco, California.  In or around the summer/spring of 2014, Plaintiff Gershman

12 purchased one bottle of Flintstones Healthy Brain Support from Walgreens in San

13 Francisco, California.  Prior to purchasing the Product, Plaintiff Gershman was

14 exposed to and saw Bayer's brain function and brain support representations by

15 reading the Product's label.  Plaintiff Gershman purchased the Product in reliance on

16 Bayer's brain function and brain support representations.    Plaintiff paid

17 approximately $15.00 for the Product.  As alleged herein the Product Plaintiff

18 Gershman purchased cannot and does not provide any brain health benefits. As a

19 result, Plaintiff Gershman suffered injury in fact and lost money at the point when

20 she purchased the Product.  Had Plaintiff Gershman known the truth about Bayer's

21 misrepresentations, she would not have purchased the Product.

22     16.    Plaintiff Sean Porter is a citizen of Illinois and resides in Roselle,

23 Illinois.  In or around July 2014, Plaintiff Porter purchased one bottle of Flintstones

24 Healthy Brain Support from Walgreens in Roselle, Illinois.  Prior to purchasing the

25 Product, Plaintiff Porter was exposed to and saw Bayer's brain function and brain

26 support representations by reading the Product's label.  Plaintiff Porter purchased the

27 Product in reliance on Bayer's brain function and brain support representations.  As

28

alleged herein the Product Plaintiff Porter purchased cannot and does not provide any brain health benefits. As a result, Plaintiff Porter suffered injury in fact and lost money at the point when he purchased the Product.  Had Plaintiff Porter known the truth about Bayer's misrepresentations, he would not have purchased the Product.

17.    Plaintiff Matthew Kaplan is a citizen of Florida and resides in Miami Beach, Florida.  Over the last year, Plaintiff purchased two bottles of Flintstones Healthy Brain Support from the Publix Supermarket in Miami Beach, Florida for his 2 year old son.  He paid approximately $15.00 for the Product.  Prior to purchasing the Product, Plaintiff was exposed to and saw Bayer's brain function and brain support representations by reading the Product's label.  Plaintiff Kaplan purchased the Product in reliance on Bayer's brain function and brain support representations. As alleged herein the Product Plaintiff Kaplan purchased cannot and does not provide any brain health benefits. As a result, Plaintiff Kaplan suffered injury in fact and lost money when he purchased the Product. Had Plaintiff Kaplan known the truth about Bayer's misrepresentations, he would not have purchased the Product.

18.    Plaintiff Chandra Law is a citizen of Florida and resides in Plant City, Florida.  In or around August 2014, Plaintiff purchased one bottle of Flintstones Healthy Brain Support from Walmart/Winn Dixie in Plant City, Florida for her 3 year old granddaughter.  She paid approximately $11.99 for the Product and purchased it approximately 12 times over the last year and half.  Prior to purchasing the Product, Plaintiff was exposed to and saw Bayer's brain function and brain support representations by reading the Product's label.  Plaintiff Law purchased the Product in reliance on Bayer's brain function and brain support representations.  As alleged herein the Product Plaintiff Law purchased cannot and does not provide any brain health benefits. As a result, Plaintiff Law suffered injury in fact and lost money when she purchased the Product. Had Plaintiff Law known the truth about Bayer's misrepresentations, she would not have purchased the Product.

19.    Defendant Bayer Healthcare, LLC is a Delaware limited liability company with its principal place of business in Whippany, New Jersey.  The sole member of Bayer Healthcare, LLC is Bayer Corporation. Bayer Corporation is an Indiana corporation with its principal place of business in Pennsylvania. Defendant is therefore a citizen of Delaware, Indiana and Pennsylvania.

20.    At all relevant times, Defendant manufactured, distributed, marketed and sold the Product and created the deceptive brain function and brain support representations, which it caused to be disseminated to consumers throughout the United States, including California, Illinois and Florida.

**FACTUAL ALLEGATIONS**

*Flintstones Healthy Brain Support*

21.    Since at least August 2013, Bayer has manufactured, distributed, marketed and sold the Product throughout the United States, including California, Illinois and Florida.  The Product is marketed as a supplement with the singular purpose of providing brain function benefits and brain support benefits.  The Product is sold in virtually every major food, drug, and mass retail outlet in the country, and retails for approximately $12-$16 for 80 gummies.  Each gummy contains 50 mg of DHA - children ages 2-3 are directed to take 1 gummy daily (*i.e.*, 50 mg DHA daily) and adults and children ages 4 and older are directed to take 2 gummies daily (*i.e.*, 100 mg DHA daily).

22.    Since the Product's launch, Bayer has consistently conveyed the message to consumers throughout the United States, including California, Illinois and Florida, that the Product provides "Healthy Brain Support" and "Supports Healthy Brain Function."  Bayer's brain function and brain support representations are false, misleading and deceptive.

23.    Each and every consumer who purchases the Product is exposed to Bayer's deceptive brain function and brain support representations, which are the

1 | only represented Product benefits and appear prominently and conspicuously on the
2 | front of the Product's packaging, as follows:

*The Product Does Not Provide Healthy Brain Support and Does Not Support Healthy Brain Function*

24. DHA is a long-chain Omega-3 fatty acid typically found in cold water fish. The DHA in Bayer's Product is not derived from fish. Instead, the Life's DHA in the Product -- manufactured by Martek Biosciences -- is from algae.

25. The Product cannot and does not support brain function or brain support because: (1) a trivial and meaningless amount of DHA is provided to the brain by the Product; and (2) American children and adults get sufficient DHA in their daily diet.

26. While *molecular* DHA does play a role in the brain, this does not mean *supplemental* DHA supports brain function. Much as the brain needs oxygen to function, humans do not need to supplement their diets with oxygen; nor do humans need DHA supplementation. In fact, there is only one reported case of Omega-3 deficiency in the United States in the last thirty years and it involved a girl on an

intravenous diet.

27.    In this regard, it should also be understood that the human body produces DHA from other Omega-3 fatty acids that are consumed on a daily basis. As result, the target population for this Product produces sufficient amounts of DHA from a variety of dietary sources, even if they do not consume dietary DHA from such foods as fish rich in DHA.

28.    Furthermore, a trivial amount of the DHA in a daily dose of the Product actually enters the brain – so small that experts in the field deem this amount as incapable of providing any brain function or brain support benefit.  Based on the amount of DHA available to the brain in the plasma pool and the amount of DHA the brain uptakes from this plasma pool, it is estimated that approximately 0.0005% of an oral dosage enters the brain in 24 hours.  And, because the brain contains about 5000 mg of DHA, a daily dose of the Product would only replace about .000005% and .00001% of the brain's DHA content in children 2-3 years of age and adults and children over 4, respectively, on a daily basis.  While these estimates may vary as much as 10-100 times in either direction, even at the highest point  in the estimate range (e.g. 100 x .00001% or .00100%), experts in the field deem this amount of DHA to be trivial and that it cannot contribute to brain function or brain support.

29.    In this vein, the IOM—the health arm of the National Academies—has issued a report stating that it does not recognize a dietary requirement for DHA as there is no DHA deficiency in adults or children in the United States.  *See* Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (Macronutrients): The National Academies Press; 2005 at 5-6, 11, 469.  Specifically, the IOM concluded that Americans consume sufficient amounts of alpha-linolenic acid (ALA), a dietary precursor to DHA, in their daily diet.  ALA is converted to DHA by a series of enzymes, largely in the liver.  Thus, the algal oil derived DHA in the Product has no effect on brain function or brain

support as it is not an essential nutrient and American adults and children are already producing adequate amounts of DHA from its dietary precursor ALA.

30.     Likewise, on April 22, 2014, the FDA, citing the 2005 IOM report, published a Final Rule that acted on and expressly rejected Martek Biosciences Corp.'s (the maker of the DHA in Bayer's Product) request that the FDA recognize a daily requirement for DHA.[3] *See* 79 Fed. Reg. 23262 *available at* http://www.gpo.gov/fdsys/pkg/FR-2014-04-28/pdf/2014-09492.pdf.   In doing so, the FDA acknowledged that there is no dietary requirement for DHA as it is not an essential nutrient. *Id.*   The FDA's ruling applies to the entire U.S. population, including adults and children ages 2 years and older – Bayer's target market for the Product.

31.     In sum, the DHA in the Product is superfluous and does not provide brain function or brain support benefits because: a) DHA is not an essential nutrient; b) Americans already get plenty of DHA in their diet; c) there are virtually no reported cases of a DHA deficiency in the United States; d) basic chemistry and biology show that the human body makes sufficient DHA by converting a different substance, ALA, into DHA; and e) the amount of DHA in Flintstones Healthy Brain Support is trivial and incapable of supporting brain function or brain support

32.     Thus, the scientific evidence is that the DHA in a daily dose of Defendant's Product does not support brain function or provide brain support in U.S. consumers aged 2 and older.

**The Impact of Bayer's Wrongful Conduct**

33.     Even though the DHA in the Product is trivial in amount and superfluous such that is does not support healthy brain function, Bayer continues to unequivocally claim that its Product provides "brain support" and "Supports Healthy

---

[3] The Martek notification proposed the following exact wording for these claims: "'Excellent source of DHA.' ('High in DHA,' 'Rich in DHA') contains ___ mg of DHA per serving, which is ___ % of the 160 mg daily value for DHA." 79 Fed. Reg. at 23263 n.3.

1    Brain Function" in children ages 2 and older, as well as adults.

2       34.    Plaintiffs and Class members have been and will continue to be deceived

3 or misled by Bayer's deceptive brain function and brain support representations.

4 Plaintiffs purchased the Product during the relevant time period and in doing so, read

5 and considered the Product label and based their decision to buy the Product on the

6 brain function and brain support representations. Bayer's brain function and brain

7 support representations were a material factor in influencing Plaintiffs' decision to

8 purchase the Product. Plaintiffs would not have purchased the Product had they

9 known that Bayer's brain function and brain support representations were false and

10 misleading.

11       35.    As a result, Plaintiffs and the Class members have been damaged in their

12 purchases of the Product and have been deceived into purchasing a Product that they

13 believed, based on Bayer's representations, provides brain function benefits and

14 brain support benefits, when, in fact, it does not.

15                    **CLASS DEFINITION AND ALLEGATIONS**

16       36.    Plaintiff Gershman brings this action on behalf of herself and all other

17 similarly situated California consumers pursuant to Rule 23(a) and (b)(3) of the

18 Federal Rules of Civil Procedure and seeks certification of the following Class:

19

20         **California-Only Class Action**
        All California consumers who, within the applicable statute

21         of limitations, purchased Flintstones Healthy Brain
        Support until the date notice is disseminated.

22         Excluded from this Class are Defendant and its officers,

23         directors and employees, and those who purchased
        Flintstones Healthy Brain Support for the purpose of

24         resale.

25       37.    Plaintiff Porter brings this action on behalf of himself and all other

26 similarly situated Illinois consumers pursuant to Rule 23(a) and (b)(3) of the Federal

27 Rules of Civil Procedure and seeks certification of the following Class:

28

**Illinois-Only Class Action**
All Illinois consumers who, within the applicable statute of limitations, purchased Flintstones Healthy Brain Support until the date notice is disseminated.

Excluded from this Class are Defendant and its officers, directors and employees, and those who purchased Flintstones Healthy Brain Support for the purpose of resale.

38. Plaintiffs Kaplan and Law bring this action on behalf of themselves and all other similarly situated Florida consumers pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

**Florida-Only Class Action**
All Florida consumers who, within the applicable statute of limitations, purchased Flintstones Healthy Brain Support until the date notice is disseminated.

Excluded from this Class are Defendant and its officers, directors and employees, and those who purchased Flintstones Healthy Brain Support for the purpose of resale.

39. **Numerosity.** The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiffs are informed and believe that the proposed Class contains thousands of purchasers of Flintstones Healthy Brain Support who have been damaged by Bayer's conduct as alleged herein. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

40. **Existence and Predominance of Common Questions of Law and Fact**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether the claims discussed above are false, or are misleading, or likely to deceive;

(b) whether Bayer's alleged conduct is unlawful;

1           (c)     whether the alleged conduct constitutes violations of the laws

2 asserted;

3           (d)     whether Bayer engaged in false or misleading advertising; and

4           (e)     whether Plaintiffs and Class members are entitled to appropriate

5 remedies.

6      41.   ***Typicality.***  Plaintiffs' claims are typical of the claims of the members

7 of the Class because, *inter alia*, all Class members were injured through the uniform

8 misconduct described above and were subject to Bayer's deceptive brain

9 function/support representations that accompanied each and every bottle of

10 Flintstones Healthy Brain Support.  Plaintiffs are advancing the same claims and

11 legal theories on behalf of themselves and all members of the Class.

12      42.   ***Adequacy of Representation***.  Plaintiffs will fairly and adequately

13 protect the interests of the members of the Class.  Plaintiffs have retained counsel

14 experienced in complex consumer class action litigation, and Plaintiffs intend to

15 prosecute this action vigorously.  Plaintiffs have no adverse or antagonistic interests

16 to those of the Class.

17      43.   ***Superiority***.  A class action is superior to all other available means for

18 the fair and efficient adjudication of this controversy.  The damages or other financial

19 detriment suffered by individual Class members is relatively small compared to the

20 burden and expense that would be entailed by individual litigation of their claims

21 against Bayer.  It would thus be virtually impossible for Plaintiffs and Class

22 members, on an individual basis, to obtain effective redress for the wrongs done to

23 them.  Furthermore, even if Class members could afford such individualized

24 litigation, the court system could not.  Individualized litigation would create the

25 danger of inconsistent or contradictory judgments arising from the same set of facts.

26 Individualized litigation would also increase the delay and expense to all parties and

27 the court system from the issues raised by this action.  By contrast, the class action

28

device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

## COUNT I
### Violation of Business & Professions Code §17200, *et seq.*
### Fraudulent Business Acts and Practices
### (On Behalf of the California-Only Class)

44.    Plaintiff Gershman repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

45.    Plaintiff Gershman brings this claim individually and on behalf of the Class.

46.    As alleged herein, Plaintiff Gershman has suffered injury in fact and lost money or property as a result of Defendant's conduct because she purchased Flintstones Healthy Brain Support in reliance on Defendant's claim that the Product would provide brain function and brain support benefits, but did not receive a Product that provides these benefits.

47.    The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL"), prohibits any "fraudulent" business act or practice and any false or misleading advertising.

48.    In the course of conducting business, Defendant committed "fraudulent business act[s] or practices" by, *inter alia*, making the brain support and brain function representations (which also constitutes advertising within the meaning of §17200) regarding the Product in its advertising campaign, including the Product's packaging, as set forth more fully herein.

49.    Defendant's actions, claims and misleading statements, as more fully set forth above, are false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, et seq.

50.    Plaintiff Gershman and other members of the Class have in fact been

deceived as a result of their reliance on Defendant's material brain support and brain function representations. Plaintiff Gershman and the other Class members have suffered injury in fact and lost money as a result of their purchase(s) of Defendant's Product which does not provide brain support or function benefits.

51. Plaintiff Gershman, on behalf of herself, all others similarly situated, and the general public, seeks restitution of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT II
### Violations of the Consumers Legal Remedies Act – Civil Code §1750 *et seq.*
### (On Behalf of the California-Only Class)

52. Plaintiff Gershman repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

53. Plaintiff Gershman brings this claim individually and on behalf of the California-only Class.

54. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act").

55. Plaintiff Gershman is a consumer as defined by California Civil Code §1761(d). Defendant's Flintstones Healthy Brain Support is a "good" within the meaning of the Act.

56. Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff Gershman and the Class which were intended to result in, and did result in, the sale of Flintstones Healthy Brain Support:

(5) Representing that [Flintstones Healthy Brain Support has] . . . approval, characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

\*        \*        \*

(7)    Representing that [Flintstones Healthy Brain Support is] of a particular standard, quality or grade . . . if [it is] of another.

\*      \*      \*

(9)    Advertising goods . . . with intent not to sell them as advertised.

\*      \*      \*

(16)   Representing that [Flintstones Healthy Brain Support has] been supplied in accordance with a previous representation when [it has] not.

57.    Defendant violated the Act by misrepresenting material facts on the Flintstones Healthy Brain Support labeling and packaging and associated advertising, as described above, when the representations were false and misleading.

58.    As alleged herein, Plaintiff Gershman has suffered injury in fact and lost money or property as a result of Defendant's conduct because she purchased Flintstones Healthy Brain Support in reliance on Defendant's false representations.

59.    Plaintiff Gershman and other members of the California-only Class have in fact been deceived as a result of their reliance on Defendant's material false representations described above. This reliance has caused harm to Plaintiff Gershman and other members of the California-only Class who each purchased Flintstones Healthy Brain Support.  Plaintiff Gershman and the other California-only Class members have suffered injury in fact and lost money as a result of these deceptive and fraudulent practices.

60.    Pursuant to California Civil Code §1782(d), Plaintiff Gershman and the California-only Class seek restitution and disgorgement.

61.    Pursuant to §1782 of the Act, on December 4, 2014, Plaintiff Gershman notified Defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.

1   62.   Defendant failed to rectify or agree to rectify the problems associated

2  with the actions detailed above and give notice to all affected consumers within 30

3  days of the date of written notice pursuant to §1782 of the Act.  Thus, Plaintiff

4  Gershman further seeks actual, punitive and statutory damages, as appropriate.

5                          **COUNT III**
   **Violation of Illinois Consumer Fraud Act**
6      **(On Behalf of the Illinois-Only Class)**

7   63.   Plaintiff Porter re-alleges and incorporates by reference the allegations

8  contained in the paragraphs 1 through 43 above as if fully set forth herein.

9   64.   In Illinois, the "Consumer Fraud and Deceptive Business Practices Act"

10  815 Ill. Comp. Stat. 502/1, et seq. ("the Act"), prohibits deceptive acts and practices

11  in the sale of such products as Bayer's Flintstones Healthy Brain Support.

12  65.   Plaintiff Porter and the Illinois-Only Class were injured by Bayer's

13  deceptive misrepresentations, and these misrepresentations were material and

14  deceived Plaintiff Porter and the Illinois-Only Class.

15  66.   Bayer does business in Illinois, sells and distributes the Product in

16  Illinois, and engaged in deceptive acts and practices in connection with the sale of

17  the Product in Illinois and elsewhere in the United States.

18  67.   The Product purchased by Plaintiff Porter and the Illinois-Only Class

19  was a "consumer item" as that term is defined under the Act.

20  68.   Bayer misrepresented material information known to Bayer as set forth

21  above concerning the Product, which has caused damage and injury to Plaintiff Porter

22  and the Illinois-Only Class.

23  69.   Bayer's deceptive acts occurred in a course of conduct involving trade

24  and commerce in Illinois and throughout the United States.

25  70.   Bayer's deceptive acts proximately caused actual injury and damage to

26  Plaintiff Porter and the Illinois-Only Class.

27  71.   Bayer intended Plaintiff Porter and all Illinois-Only Class members to

28

1  rely on its deceptive acts.

2      72.    The conduct of Bayer constituted a consumer fraud under the Illinois

3  Consumer Fraud Act.

4                                    **COUNT IV**
       **Violation of Florida Deceptive and Unfair Trade Practices Act**
5                      **(On Behalf of the Florida-Only Class)**

6      73.    Plaintiffs Kaplan and Law re-allege and incorporate by reference the

   allegations contained in the paragraphs 1 through 43 above as if fully set forth herein.
7
       74.    This cause of action is brought pursuant to the Florida Deceptive and
8
   Unfair Trade Practices Act, section 501.201, Fla. Stat., *et seq.* ("FDUTPA").  The
9
   stated purpose of the FDUTPA is to "protect the consuming public . . . from those
10
   who engage in unfair methods of competition, or unconscionable, deceptive, or unfair
11
   acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.
12
       75.    Plaintiffs Kaplan and Law and the Florida-only Class are consumers as
13
   defined by section 501.203, Fla. Stat.  Bayer's Flintstones Healthy Brain Support are
14
   goods within the meaning of the FDUTPA.  Bayer is engaged in trade or commerce
15
   within the meaning of the FDUTPA.
16
       76.    Florida Statute section 501.204(1) declares unlawful "[u]nfair methods
17
   of competition, unconscionable acts or practices, and unfair or deceptive acts or
18
   practices in the conduct of any trade or commerce."  The FDUTPA also prohibits
19
   false and misleading advertising.
20
       77.    Florida Statute section 501.204(2) states that "due consideration and
21
   great weight shall be given to the interpretations of the Federal Trade Commission
22
   and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission
23
   Act."  Bayer's unfair and deceptive practices are likely to mislead - and have misled
24
   - consumers acting reasonably in the circumstances, and violate section 500.04, Fla.
25
   Stat., and 21 U.S.C. § 343.
26
       78.    Plaintiffs Kaplan and Law and the Florida-only Class have been
27
   aggrieved by Bayer's unfair and deceptive practices and acts of false advertising in
28

that they paid for the Product that did and cannot provide the brain health benefits that Defendant has represented that the product provides. The harm suffered by Plaintiffs and Florida consumers was directly and proximately caused by the deceptive, misleading and unfair practices of Bayer, as more fully described herein.

79.    Pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Plaintiffs and Florida consumers seek damages, attorneys' fees and costs.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment:

A.    Certifying the Classes as requested herein;

B.    Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and the proposed Class members;

C.    Awarding statutory and punitive damages, as appropriate;

D.    Awarding attorneys' fees and costs; and

E.    Providing such further relief as may be just and proper.

Dated: June 5, 2015

BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, P.C.

s/ *Patricia N. Syverson*
ELAINE A. RYAN (*Admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (CA SBN 203111)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
psyverson@bffb.com
Telephone:  (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Manfred P. Muecke (CA SBN 222893)
600 W. Broadway, Suite 900
San Diego, California 92101
mmuecke@bffb.com
Telephone:  (619) 756-7748

BOODELL & DOMANSKIS, LLC
Stewart M. Weltman (*Admitted Pro Hac Vice*)

sweltman@boodlaw.com
Max A. Stein (*Admitted Pro Hac Vice*)
mstein@boodlaw.com
353 North Clark St, Suite 1800,
Chicago, Illinois 60654
Telephone:   (312) 938-1670

SIPRUT PC
Joseph Siprut (*To be Admitted Pro Hac Vice*)
17 North State Street
Suite 1600
Chicago, IL  60602
Telephone: 312.236.0000

HARKE CLASBY & BUSHMAN LLP
Lance A. Harke, P.A. (*To be Admitted Pro Hac Vice*)
lharke@harkeclasby.com
Sarah Clasby Engel, P.A. (*To be Admitted Pro Hac Vice*)
sengel@harkeclasby.com
Howard M. Bushman, P.A. (*To be Admitted Pro Hac Vice*)
hbushman@harkeclasby.com
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone: (305) 536-8220

*Attorneys for Plaintiffs*

1

2

## CERTIFICATE OF SERVICE

I, hereby certify that on June 5, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic mail notice list.

I certify under penalty of perjury that the foregoing is true and correct. Executed this 5th day of June 2015.

_____ /s/ Patricia N. Syverson _____
Patricia N. Syverson